( Decided November 2nd, 1865.)

---

VISITORS AND GOVERNORS OF ST. JOHN'S COLLEGE *vs.* WILLIAM H. PURNELL, Comptroller, and SPRIGG HARWOOD, Treasurer of Maryland.

CONTRACT, CONSTRUCTION OF: RELEASE: COMPROMISE: PRIVATE CORPORATIONS, POWERS OF.—By Resolution of the General Assembly of 1832, No. 4, certain amendments of the Charter of St. John's College were proposed, and the sum of $2,000 annually granted to them, in addition to the yearly sum of $1,000, before allowed by the Resolution of 1811, No. 38, on condition that the sum thus granted should be accepted by them, in full satisfaction of all legal or equitable claims they might have, or be supposed to have against the State, and that before receiving the same they should file their acceptance of these conditions with the Clerk of the Court of Appeals, for record. The Visitors and Governors of the College, by an instrument of writing or release, under their corporate seal, filed with the Clerk of the Court of Appeals, accepted the proposed amendments and grant, upon the conditions set forth in said Resolution of 1832. On an ap-

plication by the Visitors and Governors of the College for a *mandamus* ordering the Comptroller of the Treasury to issue his warrant, directed to the Treasurer, requiring him to pay to their order a large sum of money, claimed to be due them for arrears of annual donations under the Act of 1784, ch. 37, and thereby appropriated for the purpose—HELD:

1st. That it was clearly the intention, both of the Legislature and the Visitors and Governors of the College, not only to satisfy and extinguish all the real and supposed claims of the latter against the State, but to secure the State against all possibility of claim, by a full, specific and absolute release from all antecedent promises, contracts and obligations to them, upon which any claim could be predicated.

2nd. That the Legislature was clothed with full power to submit the proposals set forth in the Resolutions, and the Visitors and Governors of the College had equal power to accept them, and the proposals having been distinctly made and accepted, these several acts taken together, constitute, in the eye of the law, a contract equally binding and conclusive on both the contracting parties.

3rd. That the Visitors and Governors of the College were not restrained by any outstanding legal interest or right in the private donors of the College, whose donations were "for the encouragement and advancement of useful knowledge throughout the State," and there is no room to question their power to release any right conferred, or to assent to any change in their charter, which the Legislature may authorize or propose.

4th. That the Visitors and Governors of the College cannot avoid the release or set it aside on the ground that it was executed in ignorance of the real nature and extent of their rights against the State, or of the appropriate remedy for enforcing it; for the Resolutions and their acceptance were a final compromise and settlement of a controverted claim.

5th. That the essence of compromise, a mode of adjustment always favored by the law, is the waiver of pre-existing claims and remedies in favor of the right or claim ascertained and fixed by the composition.

6th. That compromise is usually resorted to for the very purpose of substituting in place of a right or claim doubtful from ignorance or upon other grounds, a new and fixed liability.

APPEAL from the Circuit Court for Anne Arundel county:

This is an application by petition of the appellants, filed the 25th of April 1860, in the Circuit Court for Anne Arundel county, for a *mandamus*, commanding the Comptroller to issue his warrant, and the Treasurer to pay such warrant, for the arrearages of the annuity due by the State of Maryland to the appellants, under their charter, the 37th chapter of the Acts of the General Assembly, passed at November session 1784.

The petitioners allege their incorporation and foundation as a body politic; that they proceeded, under the Act of incorporation, to collect large sums of money subscribed and paid by private individuals upon the faith of this charter, to erect buildings, and otherwise perform the duties required of them, and that the petitioners are the qualified successors of the first Visitors and Governors; that by the 19th section of that Act, in order to provide a permanent fund for the establishment and encouragement of the said College, it was enacted, that the sum of one thousand seven hundred and fifty pounds should be annually and forever thereafter given and granted as a donation by the public, to the use of the said College, to be applied by the Visitors and Governors to the payment of salaries of the Principal, Professors and Tutors, &c.; that the Legislature also in said Act, created and set apart a certain permanent fund to procure the said £1,750, to be received by the Treasurer, subject to the order of the Visitors and Governors, and the balance, only of such fund, after payment of the said £1,750, should remain in the Treasury, subject to the disposal of the General Assembly; that from the organization of the College until 1806, the Visitors and Governors drew out of the hands of the Treasurer the said sum of £1,750, received by him as such permanent fund, but they charge that after that year, the Treasurer refused to pay the orders of the petitioners, &c., alleging that the 19th section of the Act of 1784, was repealed by the Act of 1805, ch. 85, although they aver, that the amount received by the Treasurer from these funds so dedicated to their use, was more than sufficient to pay the said sum annually; that the annual appropriation made in consideration of the private donations by the 19th section, constituted a contract on the part of the State, which could not be repealed by the Act of 1805, and that the Act of 1805 is void and inoperative, and they refer to the case in this Court, of *The Visitors, &c., vs. The State & Governor,* 15 *Md. Rep.,* 375.

The petitioners admit, that since January 1812, they have annually received from the State, under a Resolution of the Legislature, $1,000, and from the year 1832, the further sum of $2,000 annually, and no more; that the sum of £1,750 is $4,666.67, which they are entitled to demand of the Treasurer annually, from the 1st of June 1806, subject to the credits stated above; that there is now due to the petitioners, $137,722.22⅔ of principal, which is justly payable to their order, which remains in the Treasurer's hands from the several sources of revenue provided for in the said Act, and which could not be lawfully appropriated by the Legislature for any other purpose; that the duties of the Treasurer of the Western Shore, have devolved on the Treasurer of Maryland, and that the custody of the Treasury Department was committed, and is now entrusted to the control of the said W. H. Purnell, and that the said Sprigg. Harwood is the Treasurer of Maryland; that they have applied to the said Comptroller to issue his warrant to the Treasurer, requiring him to pay to your petitioner's order the said principal sum, but that he has refused to do so for insufficient reasons, and they are advised it is necessary for them to apply to the Court for the State's writ of *mandamus*, commanding the said Comptroller to issue his warrant to the Treasurer aforesaid, and commanding the said Treasurer to pay such warrant, &c., &c.

The Comptroller and Treasurer answer this petition, and insist:

1st. That there is nothing due from the State to the relators.

2nd. That if any thing be due, there has been no appropriation made by law within the meaning of the 20th section of the 3rd Article of the Constitution, and consequently no power in the respondents to issue or pay the warrant to the relators, &c.

3rd. Assuming all the facts to be true, the Court had no jurisdiction to issue the writ of *mandamus*, it being a proceeding to enforce the performance of an alleged official duty.

OCTOBER TERM, 1865.                   633.

Vis. & Govs. of St. John's College *vs.* Comptroller & Treasurer.

In their answer, the respondents admit the facts alleged by the petitioners on which those legal and constitutional points arise.

The Court below (BREWER, J.,) refused the *mandamus*, and the petitioners appealed :

The cause was argued before BOWIE, C. J., BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*Thos. S. Alexander* and *Reverdy Johnson*, for the appellants :

The appellants contend, that the decision of the Court of Appeals, at December Term, 1859, in the case of the *Visitors & Governors of St. John's College*, (the petitioners,) *vs. The State & Governor*, 15 *Md. Rep.*, 375, determined the following points :

1st. "That the annual appropriation made by the 19th section of the Act of 1784, ch. 37, of £1,750, to be applied to the payment of salaries, &c., constitutes under all the circumstances of the case, a contract on the part of the State, which could not be legally repealed by the Act of 1805, ch. 85."

2nd. "That the Act of 1805, ch. 85, was a violation of the 10th section of the 1st Article of the Constitution of the United States, which declares, that no State shall pass any law impairing the obligation of contracts."

3rd. "That the Act of 1784, ch. 37, with the circumstances of the case, constitute such a contract as would if entered into between individual citizens be legally binding upon them," and that these points must be assumed in this Court as the law of the case.

That the Act of 1805, ch. 85, being thus declared void and inoperative, the State owed large arrearages of this annuity of £1,750, to the petitioners, in the years 1811, 1821 and 1832, which the State had no power to contract or diminish by the Resolutions of the Legislature of 1811, No. 38, 1832, No. 41, or the Act of 1821, ch. 46, respectively,

80    v.23.

even if so intended, which the petitioners deny, and they aver, that such an intention does not appear from the language of the Legislature. But whatever may be the intention of these Resolutions and this Act, they also are void and inoperative to impair the obligation of this contract made in the charter, as the Act of 1805, ch. 85, has been decided to be in 15 *Md. Rep.*, 375, referred to before. See, also, 3 *Story's Com. on Const. U. S.*, sec. 1385, 1386, 1387, 1388. 1 *Kent's Com.*, 460, *margin* 418. 1 *Curtis' Com.*, 355, 356, sec. 242. *Dartmouth College case*, 4 *Wheat. Rep.*, 643. *Canal case*, 4 *G. & J.*, 1. *Norris vs. Trustees, &c.*, 7 *Id.* *Regent's case*, 9 *G. & J.*, 365, 402. *Fletcher vs. Peck*, 6 *Cranch*, 87. *Ferrett vs. Taylor*, 9 *Cranch*, 43.

2nd. That the Visitors and Governors being trustees for the donors who founded the College and endowed it, had no power granted to them by the charter, to violate its provisions, or to abridge or destroy any of the rights, privileges or franchises granted to the College, or to release the same, or to consent to or acquiesce in any such violation by the Legislature, and such supposed assent to or acquiescence in such violation on their part, would be null and void. *Allen vs. McKeen*, 1 *Sumner's Rep.*, 277, 299, 313, 314. *Angel & Ames*, 233, 234, 237. *Grant on Corporations* 136, *margin*, 80 *Law Lib.* *Penn. Co. vs. Dandridge*, 8 *G. & J.*, 248. *Abbott vs. Savings Bank*, 1 *Md. Ch. Dec.*, 407. *Abbott vs. Bal. & Rap. Co.*, *Id.*, 542. *Bk. of Alex. vs. Planters' Bk.*, 10 *G. & J.*, 346. *Regent's case*, 9 *G. & J.*, 416.

3rd. That not only is there an absence of any such power in this charter given to the Visitors and Governors to release or consent to, or acquiesce in any such violation of its provisions, (which would frustrate its whole object and purpose,) but the charter does, in its express language, deny emphatically to the Visitors and Governors any power to do any act "contrary to the tenor of the charter," or, "in any manner to abridge or destroy its rights, franchises or immunities;" and all such acts are declared to be in

themselves null and void, but that the charter "shall be and remain unhurt, inviolate and entire, notwithstanding such void acts." 1784, ch. 37, sec. 16 and 34. *Regent's case*, 9 *G. & J.*, 416, as to the 19th section of the Act of 1812, ch. 159.

*Wm. Schley* and *Wm. Price*, for the appellees:

1st. This is, practically, a suit against the State, and in the absence of any legislation that sanctions such a proceeding. The Act of 1786, ch. 53, was ·repealed by the Act of 1820, ch. 210. The object of the appellant, in this proceeding, is to reach the funds of the State, in the Treasury, without any appropriation by law for payment of the alleged claim; and, by proceedings against the fiscal officers, to ask the Courts to exercise the functions of the legislative department of the Government. The State cannot be sued, directly or indirectly, except upon its own assent. It is a sovereign, and one of the privileges of sovereignty is exemption from liability to be sued, directly or indirectly, in the Courts of its own territory, except in cases where it has expressly assented thereto. The Legislature is the only forum in which redress can be sought by the appellant, and it must there be solicited by *petition*, not enforced through the Courts by *mandamus*. *Gardner's Institutes*, 37. *Hill vs. The United States*, 9 *How.*, 388.

2nd. Upon the merits, the appellant has no valid claim against the State, either legal or equitable. Although the opinion, in the case of the *Visitors and Governors of St. John's College*, reported in 15 *Md. Rep.*, 330, is not a judgment of this Court, yet it may be considered as an authoritative decision upon the dry point presented by the record in that case, and there considered by the Court. In form it was a suit in equity; but in fact it was not a suit in which any matter of right between parties was presented for adjudication. It was the decision of one point in the case in exclusion of all other points that were presented by the record; because, in the opinion of the Court, it was beyond

the scope of the Resolution to consider any other points than the one isolated point which grew out of the specific questions propounded by the Resolution No. 4, of the session of 1858.

But conceding that the Act of 1784 created a contract between the appellant and the State, and further conceding that the Act of 1805, ch. 85, was an unconstitutional enactment, we nevertheless respectfully insist that the "circumstances subsequently occurring," as shown by the record in this case, had the efficacy and legal effect of extinguishing all claim on the part of the appellant under the 19th section of the Act of 1784.

Passing over any separate consideration of the Resolution No. 38, of 1811, and the receipt annually of the sum of $1,000 under that Resolution, we rely upon the Resolution No, 41, of 1832; the acceptance of these Resolutions by the appellant, by solemn act under its corporate seal, and compliance on the part of the appellant with all the requirements of those Resolutions, and the receipt thenceforth of the annuities under the Resolutions of 1811 and of 1832, as constituting a full settlement and extinguishment of all claims, actual or supposed, under said Act of 1784.

(1.) It can be sustained as a compromise of a doubtful right. The language of the Resolution of 1832 is very significant: "in full satisfaction of all legal or equitable claim which the said Visitors and Governors may have, or be supposed to have, against the State." It is nothing to the purpose that we are now instructed by the opinions of the Judges, reported in 15 Md. Rep., that the Act of 1805 is an unconstitutional enactment. It may have been a very doubtful question in 1832; and, but for deference to that opinion, might be deemed by many persons, learned as well as unlearned in the law, as even at this day a doubtful question, whether said Act was or was not a valid enactment.

(2.) Other inducements, of very persuasive force, may have influenced the appellants in acquiescing at the time in said Act; in accepting, in 1811, an annuity of $1,000 as a

matter of grace, and not of rightful claim; in releasing, in 1832, all its claims, legal and equitable, actual or supposed, for the substantial consideration of an annual payment of $3,000. The corporation may have forfeited its charter by *non-user*, *misuser* or *abuser*. It may be that such a state of case existed, that the Legislature had power to direct a *scire facias* to issue for the repeal of the charter, because of the violation of some "fundamental and inviolable principle" specified in the 2nd section of the Act of 1784, or for some other sufficient reason; and the corporation may have deemed condonation of the forfeiture a sufficient consideration for the loss of any money to which it might otherwise have laid claim, *ultra* the annuities.

(3.) The terms of the Resolution of 1832 are plain and unambiguous; and they were formally accepted under the corporate seal. Whatever may be the inefficiency of a parol agreement, followed by a receipt of money, where the amount agreed to be received is not a full satisfaction, yet the efficacy of a deed of release, under seal, by a party competent to make it, and who makes it deliberately and freely and with full knowledge, is good and operative, irrespective of the consideration on which the same was made.

NOTE BY REPORTER.—This Court not having considered or passed upon the points, as to whether there was an appropriation or not for the payment of the amount claimed by the College, or whether the writ of *mandamus* would lie, the very able and elaborate arguments on these points have been omitted.

COCHRAN, J., delivered the opinion of this Court:

It is quite unnecessary to review, in this case, any of the questions considered, and as we think finally decided, in the case of these appellants against the State, reported in 15 *Md. Rep.*, 330. The 19th section of the Act of 1784, ch. 37, was there construed and held to be a contract, binding the State to pay annually, forever, the sum therein specified to the appellants, for the use of the College; and on that ground the Act of 1805, ch. 85, repealing it, was held

638 MARYLAND REPORTS.

Vis. & Govs. of St. John's College vs. Comptroller & Treasurer.

to be a law impairing the obligation of a contract within the inhibition of section 10, Art. 1 of the Constitution of the United States, and therefore void. These conclusions, founded in reason as well as supported by authority, are not to be disturbed, and we shall assume, as they require us to do, that the rights and claims of the appellants so established, still subsist, unless indeed, as the appellees contend, their acceptance of and compliance with the Resolutions passed by the Legislature in 1832, operated to discharge and distinguish them.

The substance of the proposal, made by the Legislature in these Resolutions, was to increase the board of Visitors and Governors, and to pay to them, for the use of the College, the sum of $2,000 annually, in addition to the yearly sum of $1,000 allowed by a Resolution passed in 1811, on condition that the annuity of $3,000 thus provided, should be accepted by them in full satisfaction of all legal or equitable claims they might have, or be supposed to have, against the State; and that they should, before receiving the same, file their acceptance of these conditions with the Clerk of the Court of Appeals, for record. The appellants, in response to this proposal, executed an instrument, under their corporate seal, reciting the Resolutions, and agreeing to accept the annuity in full satisfaction of all legal or equitable claims which they had, or might be supposed to have, against the State; and also, for the same consideration, to accept the proposed amendments of their charter.

The purpose of the respective parties, thus shown, was evidently a mutual one. The Legislature in granting, and the appellants in accepting, this annuity, unquestionably intended not only to satisfy and extinguish all the real and supposed claims of the appellants against the State, but to secure the State against all possibility of claim, by a full, specific and absolute release from all antecedent promises, contracts and obligations to them, upon which any claim could be predicated. That the Legislature was clothed with full power to submit the proposals set forth in the Resolu-

tions was not questioned, and if the appellants had equal power to accept them, then these acts, taken together, constitute, in the eye of the law, a contract equally binding and conclusive on the contracting parties. The honor and faith of the State are pledged for the performance of her part of the compact; and the appellants, if they had authority to enter into it, were equally bound to accept the annuity in lieu of all other dues from the State, and to abide by their release as a final and effective extinguishment of the claim asserted here.

How, then, stands the question as to the power of the appellants to bind themselves by such an instrument? They were created a private eleemosynary corporation by the Act of 1784, ch. 38, with power to receive, as they have done to a large amount, donations from private persons, as well as from the State, for the purpose of establishing the College authorized by their charter. It is true, the donations were to be held and used for the purposes of the College, but they were, nevertheless, gifts, in which the donors retained neither legal nor equitable interest, and it follows that no such interest could be transmitted to their representatives. The donations were made to a private corporation, "for the encouragement and advancement of useful knowledge throughout the State," and if that purpose of the donations be taken as the measure of the donor's interest in them, they neither had nor could have more than was common to the public at large, and, of course, only such as the Legislature could properly represent. Unrestrained, as the appellants are, by any outstanding legal interest or right in the donors, there is no room to question their power to release any right conferred, or to assent to any change in their charter which the Legislature may authorize or propose. The authorities fully sustain the doctrine, that such a corporation may, with the consent of the Legislature, exercise such a power. In *King vs. Miller*, 6 *Term Rep.*, 277, Lord KENYON says: "Where a corporation takes its rise from the King's charter, the King by grant-

ing, and the corporation by accepting, another charter, may alter it, because it is done with the consent of all the parties who are competent to consent to the alteration;" and in *Ex-parte Bolton School,* 2 *Bro. Ch. Rep.,* 662, it was held, that a charter granted by Parliament, might be changed with the consent of Parliament. The same doctrine was recognized in all the opinions delivered in the case of *Dartmouth College vs. Woodward,* 4 *Wheat.,* 518. But we are not left to these authorities alone. The point was considered and very plainly decided in the *Regents case,* 9 *G. & J.,* 365. BUCHANAN, C. J., in speaking of an Act passed to transfer the corporate rights and privileges of the Regents to a board of trustees, says, that "if the Act had been made to take effect when, or if assented to by the corporation of the Regents, it would, until that assent was given, have been in *fieri,* and when given, a law, if accepted by the trustees;" and further, "that parties to a contract have a right to rescind it, and as between the State and the corporation of Regents, such a provision would have amounted to an offer on the part of the State to rescind the contract or charter of 1812, and if assented to by the corporation, would have been an abrogation of it."

The appellants having accepted the proposals of the Legislature, and by their solemn and formal release discharged and extinguished the claim made here, have deprived themselves of the power as well as right to assert and again maintain it. They cannot avoid the release nor set it aside by saying that it was executed in ignorance of the real nature and extent of their right against the State, or of the appropriate remedy for enforcing it; for the proposals were made by the Legislature to the end and for the purpose of compromising and finally settling a controverted claim; and it must be understood that the appellants so accepted them. The essence of compromise, a mode of adjustment always favored by the law, is the waiver of pre-existing claims and remedies in favor of the right or claim ascertained and fixed by the composition; and it is usually re-

sorted to for the very purpose of substituting in place of a right or claim, doubtful from ignorance or upon other grounds, a new and fixed liability. Being of opinion that the claim asserted by the appellants has no legal foundation, it will be wholly unnecessary to consider any of the questions relating to their remedy, so fully discussed in the course of the argument, and we shall therefore affirm the order of the Court below, dismissing the petition, with costs to the appellees.

(Decided November 29th, 1865.)