CHARLES H. OTKEN *v.* J. S. LAMKIN, COUNTY SUPERINTENDENT, ETC.

1. PUBLIC EDUCATION. *School fund. How applied. Art. 8, Constitution.*
   The school fund provided by art. 8 of the State Constitution can only be applied to such schools as come within the uniform system therein devised, are under the general supervision of the State superintendent of education and the local supervision of the county superintendent, are free from all sectarian or religious control, and are open to all children within the ages of five and twenty years; though this freedom of admission does not preclude the classification of the schools according to the ages, sex, race, or mental acquirements of the pupils, — provided, only, they remain free to all who come within the class to which the particular school is set apart.

2. SAME. *High-schools. Act of 1878 unconstitutional.*
   An act of the Legislature, passed March 5, 1878, entitled "An act to encourage

the establishment of high-schools and colleges in this State," provides, in effect, that whenever a child has attended a private institution of learning, which has secured a suitable building and a library of two hundred bound volumes of miscellaneous literature, and is conducted by a teacher or teachers of good moral and educational standing, such child, whether the school so attended by him be within or without the school-district in which he resides, may receive from the common-school fund the same *pro rata* share thereof to which he would have been entitled if he had attended the public free school of his district. The act contains no requirement that the private institutions therein contemplated shall be free from sectarian or religious control, nor that they shall be under the supervision of the State or county superintendent of public education, nor that they shall be free from the charge of tuition; but it does require that the pupils shall pay the tuition which may be exacted by the persons conducting the institutions; and, as it makes such institutions wholly private, the persons conducting them are permitted to exclude any pupils they may choose to reject. *Held*, that this act is in conflict with art. 8 of the State Constitution, and is therefore void.

3. SAME.  "*Higher-grade*" *schools. Fund therefor. Art. 8, Constitution.*
The "schools of higher grade" provided for by sect. 1 of art. 8 of the State Constitution are embraced in the general scheme of that article, as well as the "free public schools" provided for in said section; and they will be, when established, equally entitled to share in the common-school fund created by said article, in such ratio and to such amount as the Legislature may deem proper, and will be equally subject to the restrictions imposed by the provisions of said article.

ERROR to the Circuit Court of Pike County.

Hon. J. B. CHRISMAN, Judge.

The plaintiff in error, on the 10th of February, 1879, filed a petition for a *mandamus* to compel the superintendent of education of Pike County to issue pay-certificates to two of the petitioner's children for their *pro rata* shares of the common-school fund of the county. The petition represented that the petitioner's children, aged eight and ten years, had been attending "Lea Female College," an institution of learning located in said county, and conducted in accordance with the provisions of an act of the Legislature, passed on the 5th of March, 1878, entitled "An act to encourage the establishment of high-schools and colleges in this State;" and that they, as pupils of said institution, are entitled, under said legislative act, to their *pro rata* share of the common-school fund of the county, as though they had attended the free

public school of the district; but that the county superintendent refused to issue to them pay-certificates for any portion of said fund. The defendant demurred to the petition; the demurrer was sustained, and the petitioner sued out a writ of error. The case presents the question of the constitutionality of the act of March 5, 1878, above referred to. The substance of the constitutional provisions involved, and the effect of the legislative act, are sufficiently stated in the opinion of the court.

*Cassedy & Stockdale*, for the plaintiff in error.

1. The act of March 5, 1878, cannot be held to be unconstitutional unless it violates the Constitution clearly, palpably, and in such manner as to leave no doubt of its invalidity. *Stewart* v. *Supervisors, etc.*, 30 Iowa, 9 ; *Campbell* v. *Union Bank*, 6 How. 625 ; *Newson* v. *Cocke*, 44 Miss. 352 ; *Thompson* v. *Grand Gulf R. Co.*, 3 How. 240 ; *Marshall* v. *Grimes*, 41 Miss. 27 ; *Donnell* v. *The State*, 48 Miss. 679 ; *Rohrbacher* v. *City of Jackson*, 51 Miss. 745.

2. The Legislature has not only the legislative power of establishing the schools of "higher grade," unlimited by the Constitution, but that instrument expressly enjoins the duty of establishing such schools as soon as practicable. And the legislative discretion is unlimited as to the mode of establishing such schools, — whether to organize the institutions, or adopt those already organized. The means adopted to carry out this constitutional provision is exclusively a legislative question. The Constitution provides one common fund for the support of a system of free schools of elementary instruction, and of a "higher grade;" and appropriations from this fund to schools of a lower or higher grade, or to the pupils of the one or the other, is not a diversion from the purposes contemplated by the Constitution. The schools established or adopted by the act of March 5, 1878, so far as the pupils are concerned, are public, and not private schools; and the money appropriated to them is not diverted from the purposes for which the fund was provided. The money thus appropriated

is applied to the same purpose, in promoting the educational needs of the pupils attending such " higher-grade " schools, as if given to the free district-schools, for elementary instruction.

3. It is clear that the Constitution intended to put in operation a " uniform " system of free schools for elementary instruction. But in providing for the establishment of " higher-grade " schools, the term " uniform " is not used in the Constitution; and the time, mode, and manner of establishing such schools are left wholly to the Legislature. It was necessary that the elementary schools be open to all within school age. But as to higher-grade schools, no such necessity existed; it was sufficient to require the latter schools to be open to all prepared to avail of the advantages of higher-grade studies. But there is nothing in the act of March 5, 1878, which prohibits any one from entering the schools therein provided for. By its terms, they are open to any student who could attend the public schools; and any such high-grade school is only allowed out of the school fund to the same extent that the pupils would be allowed if attending a public school under the general law. The failure of the act of 1878 to require that the schools therein contemplated shall be kept open for four months, was a mere omission of the Legislature to exercise a power conferred by the Constitution, but not a violation of that instrument. As to the pupils between the ages of five and twenty-one, these schools are public, and are thus brought under the supervision of the school officials, county and State, and there is no provision in the act which exempts them from the general law.

*T. C. Catchings*, Attorney-General, for the defendant in error.

1. From an examination of the provisions of art. 8 of the State Constitution, I deduce the following propositions: 1. That the Constitution created a special common-school fund *eo nomine;* 2. That it required the immediate establishment of a system of common schools; 3. That this system of

common schools was to be under the general supervision of
the superintendent of public education ; 4. That this system
was to be supported out of the common-school fund, as far
as it would go, and, in addition, by taxes to be levied for that
purpose ; 5. That, in addition to the common schools, as
soon as practicable, the Legislature was directed to establish
schools of a higher grade ; 6. That no fund was provided by
the Constitution for the support of these higher-grade schools.

2. The great educational object of the Constitution was the
establishment of elementary schools, to furnish the children
of the State the rudiments of education.   Higher schools were
considered of secondary importance.   To secure the mainten-
ance of the common schools, it was deemed proper to pro-
vide for them a certain and perpetual fund.   It was left to the
Legislature to say when higher schools should be established,
and in what manner they should be supported. · I insist that
none of the common-school fund can be used to maintain the
higher-grade schools, even where they are duly and formally
established.   The common-school fund is devoted exclusively
to the maintenance of the common schools.

3. But the schools contemplated by the act of 1878 are not
the schools of a " higher grade " which sect. 1 of art. 8 of
the Constitution authorizes the Legislature to establish.   The
Legislature was authorized to establish schools of a " higher
grade," but it was intended that they should, when established,
form a part of the uniform system of free public schools.
The Constitution established but one system of ree public
schools, some of which schools were to be elementary and
some of high grade ; but both the elementary and the high-
grade schools were to be free and public, parts of one and
the same system, and governed and directed by the State.
The schools contemplated by the act of 1878 do not meet the
requirements of the Constitution.   They are not open to all
children seeking admission and entitled to be educated in the ·
public schools, but the persons conducting them can admit or
reject applicants, as they may choose.   Religious or sectarian

schools are as much entitled to the benefits of the act as any other schools.   These schools are not free, are not required to teach children for their *pro rata* shares of the school fund, but are allowed to establish their own rates of tuition.   They are not under the supervision of any school official, county or State.

The Legislature cannot exercise the power of taxation in favor of any other than public schools.   *Curtis* v. *Whipple*, 24 Wis. 353.   See also Cooley on Tax. 86 *et seq.*

*Lamkin & Safford*, on the same side, filed a brief discussing the points of the case.

CHALMERS, J., delivered the opinion of the court.

The system of public education established and ordained by art. 8 of our Constitution contemplates the creation and maintenance of " a uniform system of free public schools," superintended and controlled by State officials.   They are to be supported out of the common-school fund established by sects. 6 and 7 of the article in question ; and if this fund be insufficient, it must be supplemented by the direct taxation authorized and contemplated by sect. 10.   At least one school must be maintained in each school district for four months in the year ; and if any district fails to do this, it forfeits its share of the fund, under the provisions of sect. 5.   The schools in each district are to be under the supervision of the county superintendent, created by sect. 4 ; and this officer is to be appointed by the State board of education, provided for by sect. 3, until such time as the Legislature may see fit to make him elective by the people.   " The general supervision of the common schools, and of the educational interests of the State," are confided to the State superintendent of education, created by sect. 2, who is to be elected by the voters of the State, for a term of four years, at the same time that the governor and other State officers are chosen.   It is lastly provided, by sect. 9, that " no religious sect or sects shall ever control any part of the school or university funds of this State."

· It is manifest, under these provisions, that no portion of the school fund can be diverted to the support of schools which, in their organization and conduct, contravene the general scheme prescribed.    That is to say, the fund must be applied to such schools only as come within the uniform system devised, and under the general supervision of the State superintendent and the local supervision of the county superintendent, are free from all sectarian religious control, and ever open to all children within the ages of five and twenty-one years ; though this freedom of admission to all will not preclude the classification of the schools according to the age, sex, race, or mental acquirements of the pupils, — provided, only, they remain free to all who come within the class to which the particular school is set apart.

The act of March 5, 1878, entitled "An act to encourage the establishment of high-schools and colleges in this State" (Acts 1878, p. 123), is plainly violative of these constitutional requirements.    It attempts to devote the proportionate share of the school fund to which each child in the State, within the prescribed age, is entitled, to the benefit of the private academies and colleges which the children may elect to attend in preference to free schools established by law.    It provides, in effect, that whenever a child has attended a private institution of learning, which has secured for itself a suitable building and a library of two hundred bound volumes of miscellaneous literature, and is conducted by a teacher or teachers of good moral and educational standing, such child, whether the school so attended by him be within or without the school-district in which he resides, may receive from the common-school fund the same *pro rata* share of said fund as if he had attended the public free school of his district.    There is no requirement, in the law, that these private institutions shall be free from sectarian control in religious matters ; it is manifest that they are not to come under the supervision, in any respect, of the State or county superintendent ; and, so far from being free, it is expressly enacted that the pupils attend-

ing them shall pay the full tuition exacted by the private persons conducting them, who can, of course, exclude any pupils they see fit, since the schools are wholly private establishments, over which the law has no control.   To hold that the common-school fund can be diverted to the building up of private educational enterprises of this character, would be plainly violative of the fundamental purpose of its creation and of the constitutional safeguards thrown around it.

If it needs adjudications and authorities to show that the scheme is violative of the letter and spirit of our organic law, they are abundant in other States, where, under constitutions substantially similar to ours, such schemes have uniformly been held unconstitutional.   *Gordon* v. *Carnes*, 47 N. Y. 616; *The State* v. *Springfield*, 6 Ind. 86; *Board of Education* v. *Brooklyn*, 13 Barb. 409; *The People* v. *Allen*, 42 N. Y. 404; *Hulbert* v. *Sparks*, 9 Bush, 260; *Collins* v. *Henderson*, 11 Bush, 76.

It is urged that sect. 1, art. 8, of the Constitution provides for the establishment both of common schools and of "schools of higher grade;" that it is to the common schools only that the subsequent sections apply, but as to the schools of higher grade, the Legislature is wholly untrammelled by constitutional restrictions, and may therefore adopt as its own the private academies already existent in the State.   The position proves too much; because, if the subsequent sections of the article do not apply to the schools of higher grade, but only to those for elementary instruction, it follows that the former must be excluded from participation in the fund provided by sects. 6 and 7, and must rely upon such other provision as the Legislature may make for them.   If, therefore, the private institutions sought to be benefited under the act of 1878 are to be regarded as the schools of higher grade spoken of in the Constitution, and, as such, free from the limitations imposed as to the common schools, they must equally, under this theory, be excluded from participation in the school fund.   The argument is fallacious in assuming that the higher-grade schools, when estab-

lished, will not fall under the general scheme prescribed. They will be equally entitled to share in the common-school fund, in such ratio and to such amount as the Legislature may deem proper, and will be equally subject to the restrictions imposed by the Constitution, so far as appropriate.

Judgment affirmed.