| 70 | 477 |
|----|-----|
| h82 | 46 |

| 70 | 477 |
|----|-----|
| 91 | 473 |

</div>

## C. C. CHRISMAN ET AL. *v.* CITY OF BROOKHAVEN.

1. MUNICIPAL BONDS. *Separate school for whites.   Const. U. S., 14th Amendment.*

     The act of 1890 (Laws, p. 376), authorizing the city of Brookhaven to issue bonds in the sum of $15,000, of which $3,000 is for the use in building and equipping a school for colored children, and $12,000 for a school for white children, is not violative of the fourteenth amendment of the United States constitution.

2. CONSTITUTION 1869. *Free school-system.   Other schools.   Taxation.*

     Under ₰ 1, art. 8, const. 1869, requiring the legislature to establish " a uniform system of free public schools," while the legislature may not authorize a diversion of the common school-fund, it may empower local authorities to provide schools outside the established system, and to pay therefor by taxation.   *Otken* v. *Lamkin*, 56 Miss., 758, distinguished.

3. SAME. *Local taxation.   Equality and uniformity.*

     Local taxation to pay bonds issued for the establishment of such schools is not violative of ₰ 20, art. 12, constitution 1869, requiring taxation to be equal and uniform.

4. LEGISLATIVE POWER.   *Separate schools for whites.   Const.* 1869, § 21, *art.* 1.

    A legislative provision for the establishment, by a municipality, of sepa-
rate schools for whites and blacks, and the issuance of bonds therefor, is
not violative of § 21, art. 1, const. 1869 of this state, which provides
that "no public money or moneys shall be appropriated for any chari-
table or other public institution in this state making any distinction
among the citizens thereof; *Provided,* That nothing herein contained
shall be so construed as to prevent the legislature from appropriating
the school-fund in accordance with the article in this constitution relat-
ing to public schools."

5. CONSTRUCTION.   *Constitution.   Doubtful provision.   Practical interpretation.*

    In construing a constitutional provision, the meaning of which cannot be
ascertained from the language used, the courts will consider the con-
temporaneous, practical construction placed on it by the legislature and
public, and uniformly acquiesced in.

FROM the chancery court of Lincoln county.

HON. H. C. CONN, Chancellor.

By § 5 of "an act to amend the charter of the city of
Brookhaven," approved February 17, 1890, the board of
mayor and aldermen of said city were authorized to issue
bonds, in an amount not exceeding fifteen thousand dollars,
"for the purpose of purchasing a site and erecting thereon
suitable buildings for the use of the public schools of said
city, and to purchase all necessary furniture, etc., for said
schools." It further provided, that of the said bonds, $3,000
might be used for the purchase of a site and the erection of
a suitable building for the free public school for colored chil-
dren, and the balance of the proceeds of the bonds should be
used for said purposes for the white schools.

Other sections of the act provide for the levy of a special
tax to pay the bonds and interest, and it is provided that the
title to the lot and buildings and apparatus so purchased or
acquired shall vest absolutely in the city. Power is also
conferred on the trustees of the public schools to lease out
the school-buildings for a series of years, provided the lessee
carries on the schools for at least ten months in each year,
and free tuition is afforded the educable children of the city.

Section 9 of the act, in seeming conflict with § 5, provides that " the proceeds of said bonds shall be used by the mayor and board of aldermen for purchasing a suitable site, and erecting thereon suitable buildings, for the white public school of said city."

Bonds were issued as provided for by said act, for the purpose of building and equipping a separate school for whites in said city, and a special tax was levied to pay the accruing interest thereon.

This bill was filed by certain resident tax-payers of the city, seeking to enjoin the collection of the tax, their contention being that the bonds are void, because so much of the act authorizing the establishment of separate schools for whites and blacks, and taxation to pay therefor, is violative of the fourteenth amendment of the constiution of the United States, and also of the constitution of 1869 of this state.

Section 21, article 1, which it is claimed is violated by said act, is as follows: " No public money or moneys shall be appropriated for any charitable or other public institution in this state making any distinction among the citizens thereof; *Provided*, That nothing herein contained shall be so construed as to prevent the legislature from appropriating the school-fund in accordance with the article in this constitution relating to public schools."

The other provisions involved are those providing for the establishment of a uniform system of free public schools. (§ 1, art. 8), and for equality and uniformity of taxation (§ 20, art. 12).

Aside from the alleged invalidity of the bonds on constitutional grounds, the bill alleges certain irregularities and misconduct on the part of the trustees in selling a portion of the bonds, in selling some to persons interested as aldermen or trustees, and in purchasing a site, the title to which is doubtful and in controversy. But, as these and other matters alleged do not affect the validity of the bonds and only relate to the conduct and management of the schools, and are

not insisted on in this court, it is not deemed necessary to state the case in any other aspect.

The court sustained a demurrer to the bill, and dismissed it, and from this decree complainants appeal.

*R. N. Miller* and *Nugent & McWillie*, for appellants.

The Brookhaven charter provides for a system of public schools wholly irreconcilable with the general system provided by the act of 1886 for all public schools in the state. The latter squares with the organic law; the former is a wide departure from it. It provides for a public school under the entire control of trustees, whose duties are nowhere defined in the charter or its amendments. We submit that, in view of the utterance of this court in *Otken* v. *Lamkin*, 56 Miss., 758, the act is unconstitutional in so far as it authorizes the purchase of grounds, the establishment of the school and issuance of bonds. The scheme provided by the act for leasing the school-building is wholly different from the constitutional scheme. If the act is maintainable, it overthrows the uniform system of free public schools.

We concede that a local tax to construct a *public* school-building is valid. *Daily* v. *Swope*, 47 Miss., 378. But it must be a school-house, constructed as a *common free school-building*, under art. 8 of the constitution.

We do not contend that the races may not be separately educated upon equal terms at public expense. This is to be commended. We, however, assume from the act itself that equal advantages are not secured to the colored children of the city. For this reason the act is violative of § 21, art. 1, const. 1869. This section refers to any moneys raised by taxation, whether in a city or in the state. The school-building is a "public institution," the charter makes the appropriation, and the money from taxation is "public money," and the exclusion of negro children is a "distinction among the citizens of the state."

The act also violates the fourteenth amendment to the con-

stitution of the United States. See *Ward* v. *Flood*, 17 Am. Rep., 405; *Roberts* v. *Boston*, 5 Cush. (Mass.), 198.

Since the main and obvious scheme of the act of 1890 is to provide for the issuance of bonds and taxation for a public school for whites, and this is unconstitutional, the whole act must fail.

*R. H. Thompson*, for appellees.

Complainants cannot, in this suit, complain of any mismanagement of the school taught in the building, to pay for which the bonds were issued. The only matter involved is the validity of the bonds and of the tax. The argument for appellants is, that, while the races may be separated in public schools, this must be done as a matter of management, after buildings are provided; that when a public school-building is being provided and a tax levied, the real purpose—to separate the races—must be concealed or obscured. Of course, such a conception is without merit. The main controversy involved is too well settled to need argument.

*H. Cassedy*, on the same side.

The legislation under which the bonds were issued is in strict harmony with the general scheme provided for free public schools. It squares fully with the tests given in *Otken* v. *Lamkin*, 56 Miss., 758. The requirement that taxation shall be equal and uniform does not prohibit local taxation for local purposes. On the subject of the uniformity of the system of public schools, see *Bourdeaux* v. *Meridian*, 67 Miss., 304; *Wynn* ·v. *State*, *Ib.*, 312.

CAMPBELL, C. J., delivered the opinion of the court.

The single question for decision is the validity of the tax for the bonds issued by the town of Brookhaven, in pursuance of the act of February 17, 1890. There may be provisions of that act which cannot be sustained; but the only question involved in this case is the validity of the levy of taxes

to pay interest on the bonds authorized by, and issued under, the act mentioned; and that involves, as a primary inquiry, the validity of the act authorizing the bonds. It is assailed as violative of the fourteenth amendment of the constitution of the United States and of several provisions of the state constitution of 1869. The suggestion of violation of the constitution of the United States is without force. The violation of the constitution of the state is said to consist in its invasion of the scheme of a uniform system of free public schools, and of equal and uniform taxation throughout the state provided for by the constitution, and disregard of § 21, art., 1 of that instrument, which declares that "*no public money or moneys shall be appropriated* for any charitable or other public institution in this state making any distinction among the citizens thereof; *provided,*" etc.

The objection, on the ground of a disregard of the scheme of the constitution as to a uniform system of free public-schools, does not extend to the authorization to issue bonds to pay for a school-building, for it is certainly competent for the legislature to authorize a town to expend money, and raise it by issuing bonds for public school-buildings, outside of and independent of the free public schools provided for by the constitution. It enjoins upon the legislature to establish and maintain a uniform system of free public schools, but does not prohibit the establishment of other schools outside of its system; and the legislature may provide for schools at pleasure, not invading the constitutional scheme. As we held in *Otken v. Lampkin,* 56 Miss., 758, the legislature may not authorize a diversion of the common school-fund, provided for by the constitution, to the maintenance of schools not within the system of free public schools, for the support of which that fund was provided; but there is in that case no support for the proposition that schools may not be established outside of the system provided for by the constitution. The legislature has power to authorize schools in particular localities, to be maintained by taxation, and it may

authorize the procurement of the necessary buildings for schools, and the issuance of bonds to pay for them; and this is neither an invasion of the constitutional scheme of uniform free public schools, nor a disregard of the provision for equal and uniform taxation, which does not prohibit local taxation for local purposes and benefits.   As the legislature may lawfully provide for the establishment of schools, and the procurement of needed buildings and equipments, and raising money to pay for them by selling bonds, as it may provide, it follows that if there be in an act authorizing this, which it has the right to authorize, one or more provisions as to the management or support of the school provided for which cannot be sustained because of conflict with the constitution, that would not make void the provision which the legislature had the right to make, viz.; the procurement of a schoolbuilding and equipments for the use of the community and suitable for school purposes.   We do not say that the act under review contains any provisions that are unmaintainable; but, if it does, the provision for procuring a schoolbuilding and equipments for the town, and issuing bonds to pay for them, is free from any legal objection by reason of any such feature.   The main purpose of the act—i. e., the establishment of a school, and the procurement of needed conveniences for it—is not so connected with, or dependent on, provisions for the management and support of the school as to cause the main purpose to fail, if the others must.   The school-house exists as a substantial reality, owned by the town, and if the school provided for by the act does not consist with law, one which does will find the school-house a suitable place for it, we suppose.

The remaining question is as to the effect of § 21, art. 1 of the constitution of 1869.   Whatever the purpose and effect of that provision, it cannot be held to deny to the legislature the right to make separate provision for the different races in the matter of schools; and it was admissible for the legislature to authorize the establishment and maintenance of

schools for whites and schools for negroes. If not, much that has been done is violative of the constitution. The practical interpretation of the constitution, begun soon after its adoption and continued until it was superseded, forbids the idea that this declaration of the constitution forbade public support of separate schools for the different races. A literal interpretation of the section would prevent an appropriation for a school or college for boys or girls, as such, and deny the establishment of institutions for the different sexes or ages or conditions, except as expressly authorized by the constitution. To hold thus would pronounce unconstitutional all appropriations for the different universities and schools of various kinds, other than the free public schools provided for by the constitution for males and females, white or colored. The proviso to the section increases the difficulty of determining its meaning.

We confess we do not know what its purpose was. It does not inhibit distinction among citizens on account of race, color or previous condition, although that was prominent when the instrument came into being. It prohibits *any* distinction, on any ground, for any cause, no matter what, among citizens. It surely does not mean that. It is probable that it was a mere platitude intended to announce the general proposition for legislative observance, that equality and fairness must govern appropriations of public money for public institutions.

Despairing of ascertaining its meaning, we take refuge in contemporaneous, practical interpretation, which caused the establishment of separate schools for the different races and sexes, and appropriation of vast sums for their support. It may be that the section has reference only to appropriations of money from the state treasury, and has no application to local institutions suited to the varying needs of particular localities.

We hold it to have been a lawful exercise of legislative

power to authorize the establishment of a school exclusively for whites, and to issue bonds as a means of doing it.

The constitution of 1890 embodies, by express provision in § 207, the rule which always prevailed in this state, that "separate schools shall be maintained for children of the white and colored races," and the absurd provision of § 21, art. 1, of the constitution of 1869 is not in the new constitution. Wherefore, our ruling accords both with past usage, universally acquiesced in without question among our citizens of all classes, and with the recent deliberate expression of the sovereign will on this subject.

*Affirmed.*