ISAAC N. ELLIS v. J. B. GREAVES, DISTRICT ATTORNEY.

1. QUO WARRANTO. *Office. School trustee. Code 1892, § 3520.*

A trusteeship of a public school is an office within the meaning of code 1892, § 3520, providing a remedy by *quo warranto* against persons unlawfully holding office.

2. CONSTITUTIONAL LAW. *Constitution 1869, art. 8, sec. 1, constitution 1890, sec. 201. Uniform system of public schools. Departures from general school law.*

Constitution 1869, art. 8, sec. 1 (constitution 1890, sec. 201), making it the duty of the legislature to establish a uniform system of public schools, prohibited the appointment by legislative act of designated persons as trustees of a public school for a term of twenty years, and granting them power to fill vacancies in their number, exclusive control of the school and other powers not conferred on trustees of public schools generally.

3. SAME. *Laws 1888, p. 173, ch. 198. Code 1892, § 4008.*

While Code 1892, § 4008, regulating the election of public school trustees generally, but providing that existing trustees of certain separate school districts should remain in office according to the terms of their appointment, did not supercede laws 1888, chapter 148, appointing and conferring extraordinary powers upon the trustees of the Hazlehurst public school, yet said act of 1888 was and is violative of constitution of 1869, art. 8, sec. 1 (constitution 1890, sec. 201), requiring a uniform system of public schools.

FROM the circuit court of Copiah county.
HON. ROBERT POWELL, Judge.

Greaves, district attorney, appellee, was plaintiff in the court below; Ellis, appellant, was defendant there. The suit was a *quo warranto* proceeding to remove Ellis from the office of trustee of the Hazlehurst public school. From a judgment in plaintiff's favor defendant appealed to the supreme court.

The case was tried upon an agreed state of facts, published in full by order of the court, which was as follows:

AGREED STATE OF FACTS.

"In 1888 the legislature of the state passed an act 'to author-
ize the board of mayor and aldermen of the town of Hazle-
hurst, Miss., to issue the bonds of the said town for the purpose
of purchasing a site and erecting buildings thereon for the
public schools of said town, and for other purposes.' See Acts
1888, p. 173, c. 148. And it is agreed that the whole act is a
part of these agreed facts, though not set out in full here. After
providing for the issuance of $15,000 in bonds, for the pur-
pose as indicated in the act, by the board of mayor and alder-
men of the said town of Hazlehurst, the rate of interest, the
time the bonds should run, etc., and giving the mayor and
board of aldermen certain powers therein named with respect
to the then school building, the act proceeds, in section 6, as
follows: 'Be it further enacted, that L. B. Harris,' etc., naming
therein thirty-two others, Isaac N. Ellis being one of them—'be
and they are hereby appointed a board of trustees of the public
schools of the town of Hazlehurst, and shall hold their office
for twenty years, and until their successors are elected; pro-
vided, no person shall hold the office of trustee unless they
reside within the corporate limits of said town, and in case of
any vacancy caused by death, resignation or removal from the
corporate limits of the said town, or from any other cause, the
remaining members of said board of trustees shall meet on the
first Monday in May, 1888, and organize by electing a presi-
dent and secretary, who shall hold their office for one year, and
a majority of said board shall constitute a quorum. Said
board may meet at any time upon the call of the president.
They shall, on the first Monday of May, 1888, and annually
thereafter, elect by ballot seven of their number, who shall con-
stitute a board of control for the public schools of said town,
and shall hold their office for one year, and until their suc-
cessors are elected.'

"It is agreed that Isaac N. Ellis was appointed a member
under the original act, and has been a member of the board of

trustees ever since, and is also one of the board of control auth-orized to be selected under the above act, and that he was regu-larly selected, agreeably to the provisions of the said act, by other trustees.  It is also agreed that the number of trustees now acting is only twenty-six, and has never exceeded that number, for the reason that, when the trustees originally organized under said charter, they found that all of the balance of the members named in said charter were non-residents of the town of Hazlehurst, and not eligible under the terms of the charter to act as trustees.  That since said organization there has never been any election of trustees to fill the vacancies occasioned by the ineligibility of those who were non-residents of the town, but the original number of twenty-six trustees as organ-ized under the act has been kept up, except, perhaps, in one or two instances, in the case of death or removal, the vacancy was not promptly filled through oversight or inadvertence.

"It is also agreed that only fifteen of the original trustees who organized under the original act are now acting as such, the balance having died, resigned, or moved away, and their places having been filled under the act of 1888.  Since the code of 1892 was adopted, five members of the acting board have been elected as members of the board of trustees, and are now acting as such with said board, and their actions are gov-erned by the act of 1888, and not by the code chapter on schools.

"It is also agreed that, in 1900, Isaac N. Ellis was elected as a member of the board of aldermen of the town of Hazlehurst, and that he qualified as a member of the same, and is now on the board of aldermen of the town of Hazlehurst, and acting in that capacity for the said town, and is also a member of the board of trustees for the public schools of said town.  It is also agreed that by acts 1890, p. 186, c. 135, § 3, the following power is given the board of control of the said town of Hazle-hurst, of which Ellis is a member, to-wit:  That the board of control of the said town of Hazlehurst shall annually, prior to the time the board of mayor and aldermen of the said town

makes the levy for the corporation taxes in each year, make
an estimate of the amount of money necessary to carry on
the public schools of the town of Hazlehurst for the ensuing
year, and it shall be the duty of the said board of mayor and
aldermen to levy a tax upon the persons and property of the
said town, subject to other taxation, sufficient to raise the
amount so reported by them by the said board of control, to be
collected the same as other taxes are now collected; said sum
so raised to be used by the said board of control to carry on
the public schools of said town. Should the board of control,
from any cause, fail or neglect in any year to make and report
said estimate of the amount of money necessary to carry on
the public schools, then the board of mayor and aldermen shall
make such levy as will, in their judgment, be necessary to carry
on said schools for the ensuing year. All of the foregoing facts
are agreed to, subject to objections for irrelavancy, incompe-
tency, and insufficiency.

"(Signed)      R. B. MAYES, *Attorney for Plaintiff.*
               J. S. SEXTON, *Attorney for Defendant.*"

*J. S. Sexton,* for appellant.

Of course it is well understood that statutes are not to be set
aside as unconstitutional unless they are manifestly so, and,
for my part, I have not been able to find any apparent conflict
between this statute and any constitutional provision. As was
well said by Judge Campbell in the case of *Wynn* v. *State,* 67
Miss., 317, "It may be difficult to determine the precise mean-
ing of the expression 'uniform system of free public schools'
as used in the constitution," but in that case the court held that
the acts of 1888, p. 36, providing for the election of county
superintendents of education in some, but not all, of the
counties, did not violate the constitution in respect to the "uni-
form system of free public schools" provided for thereby, and
when it is remembered that a very large number of separate
school districts were organized under the constitution of 1869

with substantially similar provisions to those found in the act complained of, and when it is further remembered that, notwithstanding this contemporaneous construction of the constitution of 1869 by all of the legislatures held in the state from that date to the time when the constitutional convention of 1890 adopted the constitution of that year, it is remarkable, to say the least that, if such statutes trenched upon the constitution, it was not discovered by any of said legislative bodies, and it is still further remarkable that the convention of 1890, in section 201 of the constitution enacted by it, should have re-enacted, word for word (omitting the preface), section 1 of article 8 of the constitution of 1869, without any reference to such conflicts or without the addition of such precautions as would have prevented such conflicts in the future.

The first legislature which met in the state, after the constitution of 1869 was adopted, in the acts of 1870, incorporating "Whitworth College," "Meridian Female College," "Verona Female College" and several others, enacted provisions for the selection of the trustees thereof, precisely of the same character as the provisions of the charter of the Hazlehurst high school, which are now objected to, and this practice has continued in this state ever since. In fact, if there is any one thing about which the legislative power had never been questioned in this state, it is its power to provide for the selection of trustees of schools and officers of private corporations according to its own will. The University of Mississippi furnishes another illustration here, because, notwithstanding its original charter provided for the appointment of the original trustees, which was made by the legislature, and for filling vacancies by their own body, chapter 68 of the acts of 1870 provides that all of said appointments shall be made by the governor of the state, and my recollection is, though I have not taken the pains to verify it, that at one time during the reconstruction regime the legislature provided for the selection of the trustees of the university by the legislature itself.

There is no mode provided for in the constitution of 1869 by which the trustees of the public schools of the state, and the separate school districts thereof, are to be selected or vacancies in such boards supplied, and the legislature was left perfectly free in the matter of making such selections and filling such vacancies.

It is stated in the opinion of the circuit court that the powers conferred upon this board of trustees are "powers which vitally effect the domestic affairs of the town of Hazlehurst." That the trustees of the school have the power, among other things, "to assess an annual tax upon all of the property of the town, leaving to the people no right to protest at the ballot box, or elsewhere, and only the poor privilege of footing the bills." I grant that the board of trustees has considerable power, but not a whit more than is necessary for the successful administration of the school committed to its charge. I deny the legal proposition that the board of control of the Hazlehurst high school can assess an annual tax upon anything or anybody, though it would have been perfectly permissible for the legislature to have provided for such assessments by this body if it had seen fit.

The conclusion of the whole matter is that there is no constitutional inhibition found in the constitution of Mississippi (1869), and the legislature has seen fit to repose the authority vested in the act complained of in the board of trustees, one of whom are sought to be ousted, in this proceeding, and that is the end of it. In this connection I call the attention of the court to the case of *Chrisman* v *Brookhaven,* 70 Miss., which, though not directly in point, is valued and persuasive in the present controversy, showing the trend of our court in such cases.

It is true that the constitution provides for the establishment of "A uniform system of free public schools," but this does not mean that there shall be a uniform system of electing trustees, any more than that there shall be a uniform system of

electing superintendents of education, or of building houses
for school purposes. . All of these are mere instruments in one
general uniform scheme, and the uniformity required refers to
the universality of the system to be provided for and of taxa-
tion to be exacted for that purpose, leaving the legislature all
necessary discretion as to the details of working out that system.

When the construction of the law at that time is remembered,
the construction of section 4007 of the code of 1892 is rendered
very simple. It provides for the selection of five trustees to look
after the interest of the schools in separate school districts
under formal conditions, and where no other system of selec-
tion is in vogue under some other act.

This is made clear when section 4008 is construed in con-
nection therewith. This section provides the tenure of the
office of such trustees as are provided for in section 4007, and
the method of filling vacancies occurring in the board of trus-
tees therein provided for; but, recognizing the conditions above
mentioned, and the separate school districts already in exist-
ence under special acts, such as ours, and not wishing to inter-
fere therewith, and desiring that both systems should co-operate
harmoniously, the legislature wisely provided for such condi-
tions and against the possibility of conflict in the closing para-
graph of section 4008, which is in these words: "But existing
trustees of separate school districts shall remain in office accord-
ing to the terms of their appointment or designation unless
selected under the general law, and where they are numerous
and authorized to act by a smaller number to be selected by
them, and they may continue to do so."

Here was a plain legislative declaration, that, as to such
trustees as had been selected by the general law for separate
school districts, created under such general law, a new system
was enacted, insofar as it was a new system, by section 4007
of the code of 1892. But special laws in reference to separate
school districts were not to be interfered with, and the trustees
thereof were to continue to have the same powers which they
previously had.

*Robert B. Mayes,* for appellee.

The officers, school trustees, appointed by the legislature of 1888, are not the officers of the municipality, but they are the officers of the state legislature. The people of Hazlehurst have had no voice in this appointment, but the right to participate in any further selection of these officers has been taken away from them. This sort of legislation is not the legislation of modern times, under a free and independent government, but is a species of legislation that has its place among the dark ages! If the appointment of trustees can be made in this way, constitutional provisions mean nothing, and the right of local self-government, having its birth at the dawn of civilization; recognized in the policy and history of our own laws to the broadest extent; treasured and conceded without question by our ancestors; lending efficacy to the war of our independence; giving strength to our state government to this day, and furnishing indispensable aid to our state in the preservation of peace and good order in the more thickly settled portions of the state, represented by the cities, towns and villages; this well recognized right is then but a mockery and a dream!

The court will bear in mind the fact that these trustees were not only appointed by the legislature, the people having no hand in their selection, but the power is forever taken away from them to ever have any voice in their selection. They, the trustees, are given the power of electing their own successors, and they, and not the people, whose money they spend and whose children attend this school, are given the power of electing others to fill vacancies occurring in the office of trustee.

Nor is this all, but, in the act of 1890, amendatory to the act of 1888, on p. 186, c. 135, the board of control of this school are given the power of taxation. Section 3, act of 1890, chapter 135, says: "The board of control of the public school of the town of Hazlehurst shall annually, prior to the time that the board of mayor and aldermen of said town makes the levy for corporation tax in each year, make an estimate of the

amount of money necessary to carry on the public schools of said town for the ensuing year, and it shall be the duty of the board of mayor and aldermen to levy a tax upon the persons and the property of said town, subject to other taxation, sufficient to raise the amount so reported to them by the board of control, to be collected the same way as other taxes are collected."

It ·will be seen that the trustees have not only the absolute control of the school, with self-perpetuating power, but they have also the power of unlimited taxation. It seems to me, that a more despotic power was never attempted to be exercised against people under a free government than this. Their officers of the town are appointed for them; the state does this; the power of self-perpetuation is given to the local officers so appointed; they are given the power of unlimited taxation against the people, and the right to control their school is not to be confided to them at any future time, but these officers are to serve on indefinitely! *Leroy* v. *Hurlbut,* 9 Am. Rep., 103; *Holt* v. *Dennett,* 4 L. R. A., 75.

WHITFIELD, C. J., delivered the opinion of the court. The learned circuit judge who tried this case, said in the course of his opinion:

"The act under consideration devolves large powers upon its creatures, the trustees, for a long period of time, so long that, with the average man, the appointment would be for life, which is inhibited by the constitution—powers which vitally affect the domestic affairs of the people of the town of Hazlehurst, powers which have hitherto belonged exclusively to the local municipal government. It gives to the trustees the exclusive control of the public schools of the town; to farm them out, and rent the buildings according to their judgment, for a period of ten years; to appoint teachers, who, under the law, stand in *loco parentis* to the educable children of the town; to assess an annual tax upon all the property of the town, leaving to the

people no right to protest at the ballot box or elsewhere, and only the poor privilege of footing the bills. With so large and important a part of local government destroyed, the question might well be asked, could not the legislature abolish all municipal offices, and administer the municipal government by agents of its own appointment? In other words, is there such a thing as local self-government which is inherent in the people, and which exists independent of constitutional guaranties?"

It is true, as to one of the statements, that the executive board of control of the Hazlehurst high school did not actually levy the tax; but it is made the "duty" of the board of mayor and aldermen to levy the tax to meet their estimate; so that practically it comes to about the same thing. The enumeration by the circuit judge of the extrarodinary powers conferred by this act is strictly correct in all other particulars.

On the agreed state of facts, which the reporter will set out in full, it is enough for our purpose to say that section 6 of said act of 1888 not only provides for induction into office of the trustees, but confers upon them most peculiar and extrarodinary powers—powers wholly different from the powers conferred upon trustees of common schools by the general law in force at that time or now. The purpose of the constitution of 1869, art. 8, § 1, declaring that it should be the duty of the legislature to establish a uniform system of public schools, was to make the system uniform in all that related to the executive administration of the common schools of the state. The purpose was to secure a uniform administration of the common schools. It was meant that the "system" should be administered uniformly, on a uniform plan, the same throughout the state. It is impossible to conceive how there can be any such uniform system where the trustees of some of the common schools are chosen in the mode provided for in the general law, and vested only with certain powers therein prescribed, carefully limited and defined, and the trustees of others—confessedly public schools, parts of the common-school "system"—are not only chosen in a wholly

different way from that in which other trustees are chosen, but also given the power to perpetuate themselves indefinitely; practically the power of taxation also, and other powers not conferred upon trustees selected under the general law. The object of the constitution was perfectly plain, and no amount of statement can either make it plainer or obscure that plainly declared purpose.

The case of *Wynn* v. *State,* 67 Miss., 317; 7 South., 354, holds only that the provision of the constitution of 1869 under consideration was not infringed by a statute which related alone to the method by which county superintendents of education were to be inducted into office. It was there said: "The source from which he derives his right to his office has no connection with or relation to his duties in office. They are prescribed by law, and the uniform system of free public schools is in no way dependent on, or affected by, how the county superintendent gets into office."

Nor does the case of *Chrisman* v. *City of Brookhaven,* 70 Miss., 477; 12 South., 458, in any way conflict with our view. The only thing held by that case is simply "that, while the legislature may not authorize a diversion of the common school fund, it may empower local authorities to provide schools outside the established system, and to pay therefor by taxation."

We are dealing here, not with a school separate and independent of the common school system, but with just that very thing, to wit, a high school, which is a part, and recognized as a part, and admitted by the argument of counsel for appellant to be a part, of the common school system of this state. The question here is not what the legislature might do as to establishing private schools outside of the system of common schools, but whether, in dealing with a school confessedly a part of the free common school system of this state, it can be permitted to clothe trustees of one common school with extraordinary powers denied to trustees of the common school system by the general law. It would be worse than idle to attempt to define the latter

as not infringing that uniformity of system which art. 8, sec. 1 of the constitution of 1869 imperatively commanded the legislature of the state "to establish." What is said by the learned counsel for appellant about the first legislature which met after the adoption of the constitution of 1869, approving, in the acts of 1870 incorporating Whitworth College, Meridian Female College, and Winona Female College, of the selection of trustees in the manner provided for by this act of 1888, is quite beside the mark. Those institutions were colleges, not parts of the common school system of the state, and, of course, might have been dealt with by the legislature wthout regard to the inhibition in said art. 8, sec. 1, of the constitution of 1869.

We concur entirely with the court below in its holding that section 4008 of the code of 1892 did not displace the act of 1888, and in holding that the trustee of a public school is an officer within the meaning of the statute providing the remedy by *quo warranto.* We say nothing as to the ground on which the learned circuit judge rests his opinion in the case, to wit, that the act of 1888 violated the fundamental right of the people to local home rule. He has reached the right conclusion, but we prefer to rest our reason for that conclusion upon the ground that the provisions of the act of 1888 under review plainly violated art. 8, sec. 1, of the constitution of 1869 in respect to the establishment of a uniform system of public schools, and are therefore unconstitutional and void.

The judgment is

*Affirmed.*