### WYATT v. HARRISON-STONE-JACKSON AGRICULTURAL HIGH SCHOOL-JUNIOR COLLEGE.

(In Banc. Nov. 9, 1936.)

[170 So. 526. No. 32560.]

**E. J. Adam, Jr.,** of Pass Christian, for appellant.

16

**R. C. Cowan,** of Gulfport, for appellee.

20

22

**Ethridge, J.,** delivered the opinion of the court.

This is an appeal by an objecting taxpayer from a final decree of the chancery court of Stone county validating sixty-four thousand dollars of notes of the Harrison-Stone-Jackson Agricultural High School-Junior College, located at Perkinston, in Stone county, proposed to be issued under the authority of chapter 48, Laws of Mississippi 1935, Extraordinary Session. The Board of Trustees of said school passed a resolution, accepting the offer of the United States Government to lend said school sixty-four thousand dollars, and to donate forty-five per cent. of a project costing one hundred sixteen thousand eight hundred and sixty-four dollars (not to exceed, in any event, fifty-two thousand three hundred and sixty-four dollars) for the improvement of said school; the purposes of said loan being duly recited in said resolution and in the proceedings which come within the terms of chapter 48, Laws of Mississippi 1935, Extraordinary Session. In the resolution applying for said loan, the assessed valuation of the taxable property in said counties separately, as ascertained by the last-completed assessment for taxation, was, for Harrison county nineteen million four hundred and forty-four

thousand seven hundred and fourteen dollars, for Stone county the sum of one million three hundred and sixty-six thousand seven hundred and forty-six dollars, and the pro rata share of the loan to be borne by said counties was, for Harrison county, which borders on the Gulf of Mexico, the sum of fifty-nine thousand seven hundred and ninety-eight dollars, and for Stone county, which does not so border, the sum of four thousand two hundred and two dollars. It was further alleged that the amount proportioned to improvements was as follows: For a girls' dormitory, eighty-five thousand eight hundred and sixty-four dollars; heating system, nineteen thousand dollars; and for general repairs, one thousand five hundred dollars—making a total of, approximately, one hundred and sixteen thousand three hundred and sixty-four dollars. The loan was to become payable as follows:

In 1937 to 1941, both inclusive, one thousand five hundred dollars each year.

In 1942 to 1946, both inclusive, three thousand dollars each year.

In 1947 to 1951, both inclusive, three thousand five hundred dollars each year.

In 1952 to 1957, both inclusive, four thousand dollars each year.

The proceedings of the trustees of said school were certified to the Boards of Supervisors of Harrison and Stone counties, and by them ratified and approved.

It was shown that the Junior College Commission had located said college, and in the agreed statement of facts it was recited that all the proceedings had were true and correct, and were in compliance with chapter 48, Laws of Mississippi 1935, Extraordinary Session.

The transcript of the proceedings, after submission to the state bond attorney and his approval secured thereon, was filed in the chancery court for validation. Due notice was made by the clerk to the interested par-

ties, as provided by law, and T. P. Wyatt, a taxpayer of Stone county, filed his protest challenging the legality of the proceedings upon two grounds: First, that the chancery court did not have jurisdiction to validate the notes and proceedings; and, second, that chapter 48, Laws of Mississippi 1935, Extraordinary Session, under which the notes were issued, is unconstitutional inasmuch as it violates clause (p), section 90, of the Constitution of 1890. Section 1 of said chapter 48 provides that the trustees of any agricultural high school, after meeting all the requirements, shall have the power to borrow not exceeding two hundred thousand dollars upon the terms of the act, for the purpose of erecting, constructing, repairing, remodeling, or equipping all buildings connected with the institution. By section 2, it is provided that no loan can be made until a resolution has been passed by the affirmative vote of the trustees of agricultural high schools-junior colleges, specifying the amount, rate of interest, date of maturity, and the cost of the work to be done. By section 3, it is provided that the loans shall be made payable in annual installments, not to exceed twenty-five years, with not less than one-fiftieth of the loan to mature each year, and are to be evidenced by negotiable notes bearing interest at not exceeding four per cent. payable semiannually. Section 5 provides that in case the school is owned by two or more counties, the boards of supervisors of all such counties shall annually levy a special tax sufficient to pay each county's pro rata share of the principal and interest on such loan. Section 7 provides that no agricultural high school-junior college owned by two or more counties shall borrow any money which, when added to all the outstanding funded indebtedness of said county, will cause its indebtedness to exceed ten per centum of its taxable property, *provided, this limitation shall not apply, where one of the counties borders on the Gulf of Mexico.*

It was shown in the agreed statement of facts that in Harrison county the loan exceeded ten per cent. of its assessed value, but it was not shown whether that condition existed in Stone county.

The chancery court overruled the objection to this loan, and validated the notes issued, and from this decree this appeal is prosecuted.

As to the jurisdiction of the chancery court to validate the notes, appellant contends that said notes did not come within the terms of chapter 10, Code 1930 (section 312 et seq.), providing for the validation of bonds, the pertinent part of which reads as follows: "When any county, municipality, school district, road district, drainage district, levee district, sea wall district, or any other district, or subdivision, authorized to issue bonds shall take steps to issue bonds for any purpose whatever, the officer or officers of such county, municipality or district, charged by law with the custody of the records of same shall if the board issuing same so determine by order entered on its minutes, transmit to said bond attorney a certified copy of all legal papers pertaining to the issuance of said bonds," etc. (Code 1930, sec. 313), and said bond attorney shall, thereupon, as expeditiously as possible, examine said papers, pass upon the sufficiency thereof, and render a written opinion as to the validity of the bonds, and shall transmit all papers, with his opinion, to the clerk of the chancery court of the county in which the district proposing to issue the bonds is situated. At the hearing, if no written objection is filed by any taxpayer, the chancellor shall sign the decree, or, if the chancellor be not present, the clerk shall forward all papers, and the decree prepared by the state's bond attorney, to the chancellor for his signature, and when that is done, the clerk then enters the decree upon the minutes of the court in vacation.

The contention is here made that the Harrison-Stone-Jackson Agricultural High School-Junior College is not

a district, or a municipality, as provided in the statute quoted supra, and that this school and others of like kind do not constitute any district provided for in this statute.

This calls for an examination of the acts creating such schools. Sections 6674 to 6700, Code 1930, deal with this subject, and section 6674 provides that the county school board in each county is authorized to establish not over two agricultural high schools in the county, determining their locality, one for white and one for colored children. Section 6675 provides for the support of such schools by a levy on the taxable property of the county or counties. Section 6676 provides that the control of such schools shall be vested in six trustees, one from each supervisor's district, and the County Superintendent of Education. Section 6677 provides for joint schools by two or more counties, and if a site be not agreed upon, the two places receiving the greatest number of votes shall be certified to the State Board of Education, which board shall select a site for the school. Section 6679 provides for the ownership of joint schools. Section 6680 provides for the inspection of such schools, and for their support, in part, by the state; and, among other things, it also provides that such schools shall own and operate a dairy sufficiently large to furnish milk and butter for the dormitories. It also provides that such schools shall own and operate poultry farms, model orchards, gardens, a sufficient number of pure-bred hogs, and plots of land on the school farm demonstrating the yield per acre, and the best method of cultivating such crops. It also provides that each school shall be required to have a minimum of one-eighth of an acre set apart as a vegetable garden for the use of the home economic department, and to own and operate an incubator for the teaching of poultry in said department. It also provides that each school be required to own a canning outfit for the use of the school, and for demonstration work in the different communities, and that all girls graduating

from an agricultural school must be able to make their own clothes, prepare and serve meals, and do other things necessary to ordinary household management. It is provided that the above-named standards shall be enforced, and all expenses thereof are to be paid out of the agricultural high school appropriations. Section 6681 authorizes boards of supervisors to levy on the taxable property of the county or counties a tax for the building, repair, and equipment of such schools.

Junior college graduates are required to have completed the work of the freshman and sophomore years, so as to make the work of the agricultural high school and the junior college a connected and correlated whole, or a complete unit of educational work; and section 6695 provides for the standards of junior college work.

From these sections, it will be seen that agricultural high schools are not supported out of the common school fund, but are supported, in part, by taxes levied throughout the counties, and, in part, by specific legislative appropriations. They are, therefore, school districts authorized to issue bonds under the purview of chapter 10, Code 1930, and the chancery court had jurisdiction to validate its bonds.

It is next contended that chapter 48, Laws of Mississippi 1935, Extraordinary Session, is a local law by reason of the concluding paragraph of section 7 thereof, and that it violates section 90, clause (p), of the State Constitution. If an agricultural high school is not a part of the common school system of the state, then this clause has no application.

In the agreed statement of facts, it is recited that the entire territory of the state is divided into common school districts between the white and colored races. The management of the common schools is provided for under different laws from agricultural high schools. They are separate institutions and have, in many respects, different purposes. If agricultural high schools

were a part of the common school system, their support would be provided for in sections 201 and 206 of the Constitution.

It is true that section 201 of the Constitution provides for the establishment of schools of a higher grade than the then common schools. It was contemplated by the framers of the Constitution that the Legislature should have the power, under section 201, to establish a higher curriculum than was then used in the common schools, under conditions applicable to all who might come within the terms and provisions of the law, and in Otken v. Lamkin, 56 Miss. 758, it was held that the common school fund can only be applied to such schools as are within the uniform system. In Ellis v. Greaves, 82 Miss. 36, 34 So. 81, it was held that the Constitution of 1890 prohibited the appointment of trustees for a term of twenty years. In Chrisman v. Brookhaven, 70 Miss. 477, 12 So. 458, it was held that section 201 of the Constitution did not prevent the Legislature from establishing special schools supported by public taxation, and in Turner v. Hattiesburg, 98 Miss. 337, 53 So. 681, it was held that the act creating the State Teachers' College did not create a school within the purview of section 201; that the school so created was not a part of the common school system; and that, consequently, allowing the city of Hattiesburg to levy taxes and donate ground in order to secure its location did not violate the Constitution. In State Teachers' College v. Morris, 165 Miss. 758, 144 So. 374, it was held that the power of the Legislature to pay a fund to said college for conducting a practice school embracing the common school curriculum did not violate the Constitution. In Scarbrough v. McAdams Consol. School Dist., 124 Miss. 844, 87 So. 140, it was held that a special act authorizing the issuance of bonds of a consolidated school district for building an agricultural high school violates section 90 (p) of the Constitution of 1890. By other decisions of this court, consoli-

dated schools have been held to be a part of the common schools of the state. See McLeod v. State, 154 Miss. 468, 122 So. 737, 63 A. L. R. 1161, and the authorities cited in Mississippi and Southern Digest, Schools and School Districts, Key No. 33.

The question here presented was not involved, or was not decided, in Morris v. Vandiver, 164 Miss. 476, 145 So. 228. The decision of the majority in that case turned upon the power of the Board of Trustees to levy a fee upon students for certain facilities of said school deemed, by the trustees, to be important, and providing that students who did not pay such fee should not be permitted to attend the school. The majority opinion in that case held that the statute there construed did not confer power upon the trustees to impose such a fee, and that they did not have the power to deprive students of their privileges, the right to attend school. In the minority opinion written by Judge Cook, and concurred in by Judge Griffith, there is an important and valuable discussion of the distinction between agricultural high schools and the common schools.

After a full and mature consideration of the power of the Legislature to create schools separate from the common schools provided for in sections 201, 205, and 206 of the Constitution, we have reached the conclusion that the Legislature has such power, and that agricultural high schools and junior colleges now provided for consititute schools different from, and not a part of, the common school system, and that, consequently, chapter 48, Laws of Mississippi 1935, Extraordinary Session, does not conflict with section 90 (p) of the State Constitution, and the exception, in the concluding paragraph of section 7 of the chapter on agricultural high schools and junior colleges, of counties bordering on the Gulf of Mexico, does not render the act void, nor does it invalidate the proceedings here involved.

It is not necessary for us to now say what would be the effect of the concluding paragraph of section 7, if it should be held that agricultural high schools and junior colleges were a part of the common schools provided for in sections 201, 205, and 206 of the Constitution, nor whether the statute in such case could be saved by striking out the proviso therein.

It follows from what has been said that the decree of the court below validating the proceedings should be affirmed.

Affirmed.

**Anderson, J.**, delivered a dissenting opinion.

I adhere to the views expressed in my specially concurring opinion in Morris v. Vandiver, 164 Miss. 476, 477, 145 So. 228, that under our system of public education there are only two classes of schools provided for —the colleges and common free schools—and that all schools of lower grade than the colleges are provided for by section 201 of the Constitution; they are a part of the common free school system.

Clause (p) of section 90 of the Constitution prohibits local legislation providing for the management or support of common schools. The proviso to section 7 of the act here under consideration, in fixing the tax limit, expressly excepts from its provisions the coast counties. Those counties, therefore, for the purposes of taxation are put in one class and the balance of the counties of the state in another class. It appears plain that clause (p) of section 90 of the Constitution is violated, unless that provision of the statute is separable from the remainder. Section 11 of the statute provides that the invalidity of any section, paragraph, sentence, clause, or part of the statute shall not affect the remainder of the act. My opinion is that the unconstitutional part of the act is separable from the balance and leaves a complete, consistent, and workable statute.

This view means, however, that as to Harrison county the decree is erroneous, because this construction of the statute would make Harrison county exceed the tax limit of ten per cent. of its assessed valuation of taxable property.