STATE, EX REL. PUBLIC SCHOOL DISTRICT NUMBER 6, CEDAR COUNTY, APPELLANT, V. CHARLES W. TAYLOR, APPELLEE.

FILED FEBRUARY 5, 1932. No. 27954.

*John J. Ledwith* and *P. F. O'Gara,* for appellant.

*C. A. Sorensen, Attorney General, George W. Ayres* and *Robert W. Devoe, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

Rose, J.

This is an application for a peremptory writ of mandamus commanding the state superintendent of public instruction to recognize the school in School District Number 6, Cedar county, relator, as an accredited high school and as a public school entitled to share by apportionment moneys belonging to the Nebraska school funds.

Relator averred that it was regularly organized as a public school district many years ago and that it has ever since functioned as such; that it shared state public school funds until respondent interfered with its right thereto; that the superintendent of public instruction of Cedar county duly certified to respondent data showing that relator is entitled to its share of the state public school funds. The application alleges facts sufficient to entitle relator to the writ, if School District Number 6, Cedar county, is conducting a "common or public school," within the meaning of those words as used in the Constitution and statutes relating to schools and school funds.

Respondent admitted the organization of relator as a public school district, but resisted the application for mandamus on the ground that relator is not conducting therein a public or common school. In substance, respondent pleads in his answer that relator is conducting a religious, parochial and sectarian school to which state public or common school funds cannot legally be diverted or apportioned.

Evidence was adduced on both sides at considerable length. The district court found the issues in favor of respondent and denied a peremptory writ. Relator appealed.

Counsel for relator called attention to the facts that district number 6, Cedar county, is regularly organized as a public school district and that data entitling it to share state public school funds were certified by the county superintendent of public instruction of Cedar county to respondent. In this connection it was earnestly argued that the state superintendent of public instruction had under the law no alternative but to recognize relator as an ac-

credited public school district and to make for its benefit the necessary apportionment of public school funds. It was argued that any use of the school or school building for sectarian instruction or religious exercises inconsistent with a public school maintained at public expense should be prevented by public authority without destroying the school district or depriving the pupils therein of their constitutional right to a public school education.

The nature of the school and the character of the funds which a peremptory writ of mandamus would compel respondent to apportion to relator for school purposes are material inquiries. The high moral character, qualifications, courtesy, culture and refinement of the teachers were recognized by respondent and by the witnesses who testified in his behalf on those subjects. Moreover, the building in which the school is conducted is a commodious, substantial stone and brick structure admirably adapted to school purposes.

The school building is situated in a rural community six or seven miles from the post office at Fordyce on a tract of approximately 13 acres of land belonging to St. Boniface Parish of the Roman Catholic Church. In front, across a highway, is a Catholic church. Not more than 150 feet away there is a parish house occupied by the parish priest who has the care of the three buildings of the group—all church property. There is no other building near. Cut in stone over the entrance to the school building, on top of which is a cross, is the name "St. Boniface School."

Relator, School District Number 6, Cedar county, does not own a schoolhouse but leases from St. Boniface parish three rooms in its school building, two on the first floor and one on the second, where pupils study, receive instruction and recite. Three teachers occupy living and sleeping rooms in the same building. In the basement there are a chapel and a kitchen. During the winter months the chapel is used for religious services conducted by the parish priest, where all pupils are permitted to attend. On

the altar in the chapel there are statues and other emblems of the Catholic religion. As a custom, during the greater part of the school year the priest of the parish says mass in the chapel at 8 o'clock in the morning. Before school opens for the day, pupils, while in the care of the school, march from schoolrooms to the chapel and there attend ritualistic services conducted according to Catholic faith and tenets. Beginning at 8:30 a. m. the parish priest devotes 15 minutes to religious instruction in the schoolrooms, the regular school work commencing at 8:45. The pupils have in their desks and study Catholic readers and the catechism used in Catholic parochial schools. Before and after recess they repeat little prayers.

At the request of the members of the school board of district number 6, Cedar county, the parish priest found for them three teachers who entered into a joint contract of employment for $120 a month for all. One of them received a monthly warrant for the services of the three. All are ordained nuns belonging to the Benedictine order of the Catholic sisterhood. In the schoolrooms and elsewhere they wear the garb of their sacred order, consisting of long black gown, white coif and white corona covered by a black veil. The garb includes the rosary also.

The school building and surroundings, the religious emblems, the sectarian textbooks and catechism, the prayers of the pupils, the garb and devotional attitude of the sisters and the instructions and services of the parish priest in the chapel and classrooms create an environment that reflects the spirit, example and belief of the Catholic religion in the school itself. Inculcation of that religion is part of the school work. Undisputed evidence in the record will admit of no other conclusion. Should respondent be coerced by mandamus into recognizing relator as a public or common school and consequently apportioning state public school funds to a school so conducted?

The Constitution enumerates "perpetual funds for common school purposes of which the annual interest or income only can be appropriated." These funds are trust

funds devoted exclusively to those purposes and cannot lawfully be diverted to other purposes. Const. art. VII, secs. 3-9. The Constitution declares:

"Such funds with the interest and income thereof, are hereby solemnly pledged to the purposes for which they are granted and set apart, and shall not be transferred to any other fund for other uses." Const. art. VII, sec. 9.

The Constitution further provides:

"No sectarian instruction shall be allowed in any school or institution supported in whole or in part by the public funds set apart for educational purposes." Const. art. VII, sec. 11.

"No preference shall be given by law to any religious society." Const. art. I, sec. 4.

The word "sectarian," as used in the Constitution, obviously applies to the Catholic church without any distinction between the original church and later denominations of the Christian religion, and is so used herein.

The effect of the writ demanded by relator as a matter of right would be to require the state superintendent of public instruction to apportion part of the interest and income from the state common school trust funds to a school in part sectarian—a school which is not a common or public school within the meaning of the Constitution. To recognize relator's school as a common or public school and to make the resulting apportionment sought by relator would amount to an illegal diversion of public trust funds from the purposes of the trust. To do so is not a duty enjoined by law upon respondent. The writ was properly denied.

AFFIRMED.